## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE: Jamie Lee House and**                          **Chapter 13**
        **Domita Tawnee House**                    **Cause No.: 16-51076-KMS**

### RESPONSE TO DITECH FINANCIAL, LLC's MOTION TO
### COMPEL DEBTORS TO COMPLY WITH PRIOR AGREED ORDERS
### FOR SURRENDER OF REAL PROPERTY [Dkt. No.: 72]

COME NOW, Jamie and Domita House ("Debtors"), by and through the undersigned counsel, in the above numbered and styled cause and file this *Response to Motion to Compel Debtors to Comply with Prior Agreed Orders for Surrender of Real Property* ("Response") filed by Ditech Financial LLC ("Ditech") and in support thereof, would show unto the Court the following:

1.      The Debtors generally agree with the recitation of facts presented by Ditech in its Response, but with certain exceptions, context and additions as stated below.

2.      As Ditech correctly points out, prior to filing the instant proceeding, the Debtors had a previous bankruptcy case dismissed on June 7, 2016 for failure to make payments to the chapter 13 trustee.  At the time of the filing of the present bankruptcy proceeding (June 27, 2016), both of the Debtors were unemployed and their only source of income was unemployment compensation of $1,018.00 per month.  The Debtors had two daughters in college, one son in high school and one son who had recently graduated from high school.  Based upon their household size, the Debtors were more than $45,000.00 below median household income for a family of six (6) living in Jasper County, Mississippi.  Their only reliable mode of transportation—a 2006 Pontiac Grand Prix—had been repossessed four (4) days prior to the filing of the instant proceeding.  In short, the Debtors had few alternatives to initiating another bankruptcy case.

3.      The Debtors' Chapter 13 plan (Dkt. # 19) ("Plan"), which was filed on July 25, 2016, proposed to pay their ongoing mortgage payment directly to Ditech each month.  The Debtors engaged in mediation with Ditech in March 2016 concerning their real property and residence.  As noted by Ditech, the mediation did not result in a settlement agreement between the parties.  The Debtors' Plan proposal to pay a direct mortgage payment to Ditech was based upon two factors: (1) they could not afford to pay the ongoing mortgage payment and current mortgage arrears through the Plan and (2) they had an ongoing dispute with Ditech that had been mediated without resolution; arbitration was the next step.

4.      In September of 2016, Ditech moved to lift the automatic stay (Dkt. # 39) on the Debtors' principal residence because the Debtors had failed to remit direct monthly mortgage payments to Ditech pursuant to the Plan.  Jeff Rawlings of Rawlings & MacInnis filed the Motion on behalf of Ditech.  A hearing was initially scheduled for November 17, 2016 (Dkt. # 42), but was continued to December 8, 2016 (Dkt. # 48) by agreement of the parties.

5.      At the time of the December 2016 hearing, the Debtors had only two viable options with respect to their principal residence as it applied to their Plan:  they could either (1) propose to pay the ongoing mortgage payment and mortgage arrears through the Plan; or (2) propose to abandon the property.  The Debtors simply could not afford to pay the ongoing mortgage payment and mortgage arrears through the Plan (the Debtors' mortgage was more than $12,000.00 in arrears).  This Court, in *In re: Jeanfreau*, Case No.: 13-50015-KMS (Bankr. S.D. Miss. June 12, 2013),  has stated that debtors involved in a Chapter 7 proceeding can reaffirm, redeem or surrender collateral secured by loan proceeds in accordance with *Johnson v. Sun Finance Co.*, 89 F. 3d 249 (5th Cir. 1996).  The option to "ride through" the bankruptcy proceeding no longer exists in this jurisdiction with respect to Chapter 7 debtors.  *Id*. The

*Jeanfreau* decision does not address the concept of a proposed "ride through" plan provision in a chapter 13 proceeding; however, non-standard mortgage provisions in a Plan, unless agreed to by the secured creditor, will generally fail to satisfy the requirements of 11 U.S.C. § 1325.  In addition, non-standard mortgage provisions generally draw an objection from the secured creditor, the trustee or the Court *sua sponte*.  For example, a provision in the Plan that the Debtors would continue to negotiate with Ditech and, if negotiations are successful, will pay ongoing mortgage payments directly to Ditech would likely not be confirmed by this Court nor consented to by Ditech or the trustee.  *See In re Tosi*, 546 B.R. 487 (Bankr. D. Mass. 2016) (granting secured creditors' objection and denying confirmation of a proposed Chapter 13 Plan, which provided for automatic vesting of debtor's interest in mortgaged property to mortgagee if debtor and his wife did not succeed in selling the property within 90 days of the plan's effective date).

6.      It is uncontested that an Agreed Order (Dkt. # 51) was entered on December 20, 2016 granting Ditech's Motion to Lift Stay and Abandon Collateral ("Agreed Abandonment Order") pursuant to 11 U.S.C. § 554.  11 U.S.C. § 554(c) states that "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."  Under 11 U.S.C. § 554, abandonment "divests the property from the estate. Ownership and control of the asset is reinstated in the debtor with all rights and obligations as before filing a petition in bankruptcy."  *In re Franklin Signal Corp*., 65 B.R. 268 (Bankr. D. Minn. 1986); *see also Bennett v. Commercial Credit Plan,* 13 B.R. 643 (Bankr. D. Mich. 1981); *Riggs National Bank v. Perry*, 29 B.R. 787 (Bankr. D. Md. 1983), *aff'd,* 729 F.2d 982 (4th Cir. 1984); *In re Cruseturner*, 8 B.R. 581 (Bankr. D. Utah 1981).

3

7.      At the time of the entry of the Agreed Abandonment Order, the property was abandoned from the estate and reverted back to the Debtors.  Title did not automatically transfer from the Debtors and vest in Ditech.  Instead, Ditech retained a lien against the Debtors' principal residence after the entry of the Agreed Abandonment Order.  Likewise, the Debtors retained all rights and defenses afforded to them pursuant to their contract with Ditech (and provided for by statute and from common law) that they had prior to initiating the present bankruptcy proceeding.  The Agreed Abandonment Order did not obligate Debtors to move out of their home and hand over the keys to Ditech five days before Christmas of 2016.  Unlike the Debtors, Ditech now had a multitude of options at their disposal relative to the Debtors and their home.  Ditech could offer loss mitigation options to the Debtors, initiate collection letters, monthly mortgage statements, and could ultimately foreclose on the property if other viable work-out options failed.  However, as discussed in more detail below, Ditech had already agreed to arbitrate the Debtors' claims.

8.      Ditech next points to the Trustee's Objection to the Secured Claim of Ditech (Dkt. # 63) and the Agreed Order on the Trustee's Objection (Dkt. # 66) as further evidence of the Debtors' intent to surrender the property.[1]  The Agreed Order, just like the Agreed Order of Abandonment, did not convey title to Ditech and did not change the parties' rights or defenses existing prior to or during the present proceeding once the automatic stay had been lifted.  In fact, the Agreed Order plainly states that Ditech's "Claim is allowed for all other purposes, including enforcement of Ditech's lien and payment of any unsecured deficiency balance . . . that may remain after Ditech liquidates its collateral." (Dkt. # 66).

9.      Even Ditech must acknowledge that it did not automatically take possession of,

---

[1] It should be noted that for this transaction, Ditech retained Glenn E. Glover of Bradley Arant Boult Cummings, LLP in Birmingham, Alabama.

and gain title to, the Debtors' home and land upon the entry of the Agreed Abandonment Order because they acknowledge that "[o]n June 26, 2018, Ditech and the Debtors participated in a second mediation with respect to their construction defect claims." (Dkt. # 72, ¶ 29). If the Debtors' principal residence was truly abandoned, why did Ditech continue to mediate with the Debtors instead of proceeding with a foreclosure sale? Ditech goes on to state that it conveyed an offer that the Debtors rejected by letting the offer expire. What Ditech fails to disclose to the Court is that their "offer" was for the Debtors to move out of their home and that Ditech would pay a lump sum to the Debtors' chapter 13 trustee. The Debtors did reject Ditech's offer and let it expire because they wanted (and still want) to retain their home. The Debtors' actual intentions are in conflict with the allowable provisions that this Court would confirm in a proposed Plan; therefore, proposing to abandon the property in the Plan was the Debtors' only viable option. Moreover, the Debtors' position is that they remain in possession of their principal residence pursuant to 11 U.S.C. § 1306(b), which states that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." Although their principal residence has been abandoned from the estate, the Debtors still retain possession of their home and title is still vested in the name of the Debtors.

10.     It appears that Ditech may be confusing the "surrender" of collateral with "vesting" of that collateral when the two terms have different meanings and legal implications. "'[S]urrender' means only that the debtor will make the collateral available so the secured creditor can, if it chooses to do so, exercise its state law rights in the collateral." *In re Williams*, 542 B.R. 514, 518 (Bankr. D. Kan. 2015) (quoting *In re Rose*, 512 B.R. 790, 793 (Bankr. W.D.N.C. 2014)) (construing surrender for purposes of § 1325(a)(5)(C)); *see also In re Lair*, 235 B.R. 1, 12 (Bankr. M.D. La. 1999) (stating that "surrender" means nothing other than

choosing not to utilize the bankruptcy alternatives of reaffirmation, redemption or exemption and avoidance).   "Surrender, as a ceding of possessory rights, is merely 'a preliminary step in the transferring of title.'"   *In re Sagendorph*, 2015 WL 3867955 *2 (Bankr. D. Mass. 2015). "Vesting," on the other hand, "means transferring title."   *Id*.   Here, as mentioned, the Debtors' principal residence has been abandoned from the bankruptcy estate, but title has not transferred from the Debtors to Ditech.  The Debtors remain in possession of the property and title is still vested in the Debtors.

11.     Following the second failed mediation in July of 2018, Stewart Robison (Ditech's fourth lawyer to pursue either transactional or litigation work on its behalf in addition to Rawlings & MacInnis, Bradley Arant and Jones Walker) began foreclosure proceedings on the Debtors' property with a sale date scheduled for August 14, 2018.  As noted by Ditech, the Debtors filed a demand for arbitration on August 7, 2018.  Ditech declined to stop or otherwise postpone the August 14, 2018 foreclosure sale based upon the arbitration demand, so the Debtors, by and through Robert Logan, filed a petition for preliminary injunction in the Chancery Court of Jasper County, Mississippi on August 13, 2018, one day prior to the public auction of the Debtors' property.  On the same day, the Debtors filed a demand for arbitration with JAMS.  Ditech decided to postpone the foreclosure sale, purportedly because of the petition for injunction and the demand for arbitration.  On August 22, 2018, Ditech filed the instant Motion to Compel with this Court.

12.     Ditech incorrectly avers that the "Debtors repeatedly state that Ditech agreed to 'arbitrate all claims,' but the only evidence provided is an email stating that Ditech's  counsel agreed to a re-filing of the arbitration demand with JAMS after Bobby Dallas declined to serve. Ditech has never agreed to arbitrate foreclosure."  (Dkt. # 72, ¶ 37).  As provided in the attached

6

affidavit, Jeffery Reynolds, one of the Debtors' lawyers in the above-referenced meditations, reached an agreement with Ditech's lawyer, Adam Stone, to arbitrate "all claims" of Ditech or the Debtors.  *See* Affidavit of Jeffery Reynolds attached hereto as Exhibit "A."   Ditech is no stranger to demanding arbitration.  By and through their attorneys, Ditech has moved to compel arbitration in more than a dozen proceedings in the Southern District of Mississippi and Judge Barbour has granted Ditech's request in every instance.[2]  The Debtors should be treated no differently than any of the other litigants that have pursued claims against Ditech and there is absolutely no reason why Ditech should not be forced to arbitrate its claims, including foreclosure, as Ditech agreed to do.

13.     Ditech directs the Court to *Failla v. Citibank, N.A.*, 838 F. 3d 1170 (11th Cir. 2016) in support of its argument that the Debtors should not be allowed to contest the foreclosure of their property because they voluntarily abandoned the property and the abandonment was memorialized by three separate orders issued by this Court (the confirmed Plan, the Agreed Order of Abandonment and the Agreed Order on the Trustee's Objection to Ditech's secured claim).  But Ditech's argument fails as the *Failla* decision is distinguishable and inapplicable for a number of reasons.  **First**, as Ditech admits "*Failla* was a Chapter 7 proceeding in which the debtors stated their intention to surrender the property pursuant to 11 U.S.C. § 521(a)(2)."  (Dkt.

---

[2] *See, e.g. Green Tree Servicing, LLC, et al. v. Donald and Teresa Keyes*, Civil Action No. 3:16cv58-WHB-JCG (S.D. Miss.) [Dkt. #38, 39]; *Green Tree Servicing, LLC, et al. v. Earnest and Shelia Clayton*, Civil Action No. 3:16cv59-WHB-JCG (S.D. Miss.) [Dkt. #39]; *Green Tree Servicing, LLC, et al. v. Billy R. Brown*, Civil Action No. 3:16cv317-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Cassandra Campbell*, Civil Action No. 3:16cv325-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Henry House, et al.*, Civil Action No. 3:16cv316-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al.* v. *Thomas Keyes*, Civil Action No. 3:16cv552-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Marilyn Mathis*, Civil Action No. 3:16cv315-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Ben and Janie Dove*, Civil Action No. 3:16cv319-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Alicia and William Floyd*, Civil Action No. 3:16cv313-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Stacy and April Miller*, Civil Action No. 3:16cv311-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Henry Wayne Robinson*, Civil Action No. 3:16cv321-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Marvell and Roslyn Ducksworth*, Civil Action No. 3:16cv48-WHB-JCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Darlene Haynes*, Civil Action No. 3:16cv551-WHBJCG (S.D. Miss.); *Green Tree Servicing, LLC, et al. v. Elvert and Ashley Horne*, Civil Action No. 3:16cv47-WHB-JCG (S.D. Miss.)

7

# 72, ¶ 46).  The instant proceeding was filed pursuant to Chapter 13 of Title 11 of the Bankruptcy Code, which is different in many respects to a Chapter 7 proceeding.  At least one of these differences was discussed herein above.  *See, e.g.*, *In re: Jeanfreau*, Case No.: 13-50015-KMS (Bankr. S.D. Miss. June 12, 2013) (holding that Chapter 7 Debtors could only reaffirm, redeem or surrender collateral secured by loan proceeds).  The Debtors in *Failla* had also been granted a discharge in their Chapter 7 proceeding.  Here, the Debtors are in their second year of a five year reorganizational plan; it will be 2021 before their case is ready for discharge.  The Debtors have not received all of the benefits of the bankruptcy, namely, payment in full on their secured debt not abandoned from the estate and a discharge of their unsecured debt.  Further, the Debtors here, unlike the Debtors in *Failla*, have acted in good faith in the instant proceeding.

**Second**, as discussed above, the Debtors' property was abandoned by the Agreed Order of Abandonment pursuant to 11 U.S.C. § 554, which "divests the property from the bankruptcy estate.  Ownership and control of the asset is reinstated in the debtor with all rights and obligations as before filing a petition in bankruptcy."  *In re Franklin Signal Corp.*, 65 B.R. 268, 274 (Bankr. D. Minn. 1986).  **Third**, the Debtors in *Failla* lived in Florida.  Florida, unlike Mississippi, is a judicial foreclosure state where a lender must initiate a formal lawsuit against the borrower in order to foreclose upon the property.  In light of this fact, it makes some sense that a Debtor in a judicial foreclosure state could be found to be abusing the judicial process by initiating a defense to a foreclosure action after stating their intention to surrender property in a Chapter 7 proceeding because of the cost, time and judicial resources devoted to judicial foreclosure proceedings in certain states.  These facts, rules and procedures do not apply in Mississippi and, as mentioned, the Debtors retain all rights that they had to the property prior to the commencement of their bankruptcy proceeding.  *Franklin Signal Corp.* at 274.  **Fourth,** the

8

holding in *Failla* is an outlier and has not been uniformly followed by Courts both outside and within the Eleventh Circuit.  *See, e.g. In re Elkouby*, 561 B.R. 551, 557 (Bankr. S.D. Fla. 2016 ("[I]t is apodictic that a lienholder cannot, in any court, assert that a debtor's indicated intent to surrender real property in a chapter 7 case has any consequence with respect to the lienholder post-bankruptcy, including precluding that debtor from defending an action by a lienholder to foreclose its security interest in real property.");  *Skibbe v. U.S. Bank Trust, N.A.*, 2017 WL 2506405 (N.D. Ill. June 9, 2017) (unpublished) (declining to follow the holding in *Failla*); *In re Gregory*, 572 B.R. 220 (Bankr. W.D. Mo. 2017) (similarly declining to follow *Failla* and denying a request to use § 105(a) powers to compel a debtor to do "something" in connection with a statement of intention or to enforce performance of the intention); *In re Ayala*, 568 B.R. 870 (M.D. Fla. 2017) (declining to follow *Failla* and concluding that the debtors' post-bankruptcy conduct did not evidence an abuse of process illustrated in *Failla*); *In re Ryan*, 560 B.R. 339 (Bankr. D. Haw. 2016) (vacated and remanded as moot by *In re Ryan*, 2018 WL 1938512 (9th Cir. B.A.P. 2018) (disagreeing with *Failla* and similar decisions holding that surrender requires the debtor to give up all rights to defend against a post-discharge foreclosure and that surrender means that the debtor does not intend to reaffirm, redeem or exempt the property).  **Lastly,** Ditech received relief from the automatic stay nearly two years ago, in December 2016, yet they waited until July of 2018 to initiate foreclosure proceedings against the Debtors real property, even though Ditech's position is that the Debtors have surrendered their home by consent in this proceeding.  Ditech's actions outside of this proceeding—waiting to foreclose on the subject property for nearly two years, coupled with the fact that they have four different law firms conducting both transactional and litigation work on their behalf that apparently do not communicate as to their actions involving these particular Debtors—indicates

that they lack faith in their position, otherwise Ditech would not be asking this Court to make the Debtors voluntarily cease any opposition to their foreclosure actions.  If Ditech truly believed that they were correct, the foreclosure sale would not have been delayed and title would have already transferred from the Debtors to Ditech.  Alternatively, Ditech could have presented their arguments to the Jasper County Chancellor, but instead they chose to proceed before the Bankruptcy Court.  This Court should deny Ditech's request to compel the Debtors to comply with the surrender of their real property and residence and Order that this matter is subject to arbitration, as agreed to by Ditech.

14.    For the above reasons, the Debtors respectfully request that the Court will enter an Order denying Ditech's Motion to Compel.

**WHEREFORE, PREMISES CONSIDERED**, Debtors respectfully request that the Court enter an Order denying the Motion to Compel filed by Ditech, and for such other relief to which the Debtors may be entitled.

Respectfully Submitted,

Jamie and Domita House

/s/ Blake Tyler

By:_____
Blake A. Tyler, Esq. (MSB#101786)
Attorney for the Debtors

Blake A. Tyler, Esq. (MSB#101786)
**GADOW|TYLER, PLLC**
511 East Pearl Street
Jackson, Mississippi 39201
Phone/Fax: 601.355.0654/ 601.510.9667
Email: blake@gadowtyler.com
www.gadowtyler.com

**<u>Certificate of Service</u>**

I, Blake A. Tyler, do hereby certify that I have this day delivered a true and correct copy of the foregoing document to the following individuals/entities by United States mail or electronic means:

Adam Stone
Kaytie Pickett
Jeffrey Barber
Jackie Bost
JONES WALKER, LLP
Counsel for Movant

U.S. Trustee

J.C. Bell and Sam Duncan

So certified, this the 6th day of September, 2018, in Jackson, Mississippi.

*/s/ Blake Tyler*
_____

Blake A. Tyler, Esq. (MSB#101786)