

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: January 18, 2019**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  **JAMIE LEE HOUSE**                                   **CASE NO. 16-51076-KMS**
        **DOMITA TAWNEE HOUSE**

**DEBTORS**                                                              **CHAPTER 13**

### OPINION AND ORDER COMPELLING SURRENDER
### (Dkt. # 72)

       This matter came on for hearing on the Motion to Compel Debtors to Comply with Prior Agreed Orders for Surrender of Real Property, ECF No. 72, by U.S. Bank, N.A., as trustee for Mid-State Trust XI by Ditech Financial LLC as servicer with delegated authority; and the Response, ECF No. 75, by Debtors Jamie Lee House and Domita Tawnee House. This proceeding is within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(A) and (O).

       Ditech seeks an order compelling Debtors to surrender to Ditech the real property at 1757 County Road 16, Louin, Mississippi ("Property") and to withdraw their pending requests for an injunction against foreclosure in state court and in a complaint for arbitration. Mot. ¶ 42, ECF No. 72 at 8. Ditech argues that because Debtors agreed to surrender the Property under the terms of two agreed orders and by the treatment of Ditech's claim in the confirmed chapter 13 plan, Debtors may not oppose foreclosure.

The Court took under advisement the question of what "surrender" means under the facts of this case and concludes that Ditech is correct; Debtors may not oppose foreclosure. The Motion is therefore granted.

## FINDINGS OF FACT

The following facts are taken from the record in this case, judicially noticed filings in Debtors' two previous cases,[1] and the Motion's recitation of facts, with which Debtors "generally agree," Resp. ¶ 1, ECF No. 75 at 1.

1. In December 2010, Debtors bought a house from Walter Mortgage Company LLC, financing the purchase with a promissory note secured by a deed of trust. Ditech Exs. A-C, ECF Nos. 72-1, 72-2, 72-3.

2. In November 2013, Debtors filed the first of their three chapter 13 cases, *In re House*, No. 13-52177-KMS (Bankr. S.D. Miss. filed Nov. 1, 2013). Debtors have been in bankruptcy more or less continuously over the five years since then. *See id.* (dismissed Feb. 23, 2015, for failure to make plan payments); *In re House*, No. 15-50532-KMS (Bankr. S.D. Miss. filed Mar. 30, 2015; dismissed June 7, 2016, for failure to make plan payments); *In re House*, No. 16-51076-KMS (Bankr. S.D. Miss. filed June 27, 2016).

3. Ditech's predecessor in interest filed proofs of claim in both the previous cases, asserting a $4,753.98 arrearage in the first case and an $8,684.76 arrearage in the second case. Ch. 13 Case No. 13-52177-KMS, Cl. No. 3-1 at 1; Ch. 13 Case No. 15-50532-KMS, Cl. No.

---

[1] "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985). Although "a previously filed court document will generally not be competent evidence of the truth of the matters asserted therein," its filing does provide "competent evidence of certain facts—that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made." *Nantucket Inv'rs II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 205 (3d Cir. 1995).

1-1 at 1. Ditech's proof of claim in the current case asserts a $12,720.72 arrearage. Cl. No. 5-1 at 2.

4. In the fall of 2015, during the pendency of their second case, Debtors sought mediation with Ditech over alleged construction defects. Mot. ¶ 11, ECF No. 72 at 2. The mediation failed. *Id.* at 3, ¶ 13; Resp. ¶ 3, ECF No. 75 at 2.

5. In December 2016, pre-confirmation in the current case, Debtors, Ditech, and the chapter 13 Trustee entered into an Agreed Order on Motion to Abandon Collateral and Lift Stay ("Agreed Abandonment Order"), ECF No. 51. The Agreed Abandonment Order terminated the stay as to the Property and concluded with the following sentence: "*Since the Debtors are surrendering Ditech's collateral*, this Order shall become immediately effective . . . ." *Id.* at 2 (emphasis added).

6. At hearing on the Motion, Debtors' counsel stated, "We did enter the agreed order to surrender it." Hr'g Tr., ECF No. 79 at 12:10-11.

7. In April 2017, Debtors filed a demand for arbitration with an arbitration service, but then dismissed the demand as contrary to the parties' agreement that any arbitration would be held before the mediator. Mot. ¶¶ 21-23, ECF No. 72 at 5.

8. In June 2017, Debtors' chapter 13 plan ("Plan") was confirmed. ECF No. 57. Ditech and the Property were listed under the "Special Claimants" section, with the proposed treatment "Abandon, AO [Agreed Abandonment Order] DK #51." *Id.* at 5.

9. The Plan does not provide for any payment to Ditech. *Id.* at 4.

10. Shortly after confirmation, the Trustee objected to Ditech's secured claim "for the reason that *the plan proposes to surrender and/or abandon* the collateral." ECF No. 63 (emphasis added).

3

11. In July 2017, this objection was resolved by another agreed order entered into by Debtors, Ditech, and the Trustee ("Agreed Order on Proof of Claim"). ECF No. 66. The Agreed Order on Proof of Claim disallowed Ditech's claim "only for purposes of further repayment in Debtors' Chapter 13 Plan due to *Debtors' intention to surrender their interest in the [P]roperty* . . . and Trustee's abandonment of same." *Id.* ¶ 1 (emphasis added). It allowed Ditech's claim "for all other purposes, including enforcement of Ditech's lien and payment of any unsecured deficiency balance on the Claim that may remain *after Ditech liquidates its collateral*." *Id.* ¶ 2 (emphasis added).

12. In June 2018, eleven months after entry of the Agreed Order on Proof of Claim, Ditech and Debtors participated in a second mediation over the alleged construction defects. Mot. ¶ 29, ECF No. 72 at 6. This mediation also failed. *Id.*

13. In July 2018, the trustee under the deed of trust for the Property began publication for a foreclosure sale. *Id.* ¶ 30.

14. In August 2018, before the sale date, Debtors filed a new arbitration demand, initially with the mediator, who declined, and then with the arbitration service. *Id.* ¶¶ 31, 33, 40. In addition to damages, the demand requested an injunction restraining the foreclosure sale and any eviction proceedings. *Id.* ¶ 40.

15. Debtors also sought an injunction from the Jasper County Chancery Court to enjoin the foreclosure sale pending arbitration. *Id.* ¶ 34. The irreparable harm that Debtors asserted would ensue in the absence of injunctive relief was that they would lose possession of the Property. Compl. ¶ 16, Ditech Ex. I, ECF No. 72-9 at 5.

## CONCLUSIONS OF LAW

A debtor has only three options for the treatment of secured debt in a chapter 13 plan: propose a treatment the creditor will accept, cram down the debt over the creditor's objection, or surrender the collateral. *In re Metzler*, 530 B.R. 894, 898 (Bankr. M.D. Fla. 2015) (paraphrasing 11 U.S.C. § 1325(a)(5)(A)-(C)).

The Bankruptcy Code does not define "surrender." But as the Fourth Circuit Court of Appeals has said, "the word's general meaning is not a mystery." *IRS v. White (In re White)*, 487 F.3d 199, 205 (4th Cir. 2007). "'[S]urrender' means the relinquishment of all rights in property, including the possessory right." *Id.*; *see also Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006) ("to cede [the debtor's] possessory rights in the collateral").

Under chapter 13, "surrender" means relinquishing rights in favor of the secured creditor. *See* 11 U.S.C. § 1325(a)(5)(C) (providing that "the debtor surrenders the property securing such claim to such holder [of the claim]"); *see also In re White*, 487 F.3d at 205 ("[T]he 'surrender' spoken of [in § 1325(a)(5)(C)] entails the secured creditor ultimately holding all rights, including the right of possession, in the property securing the claim."); *In re Cormier*, 434 B.R. 222, 230 (Bankr. D. Mass. 2010) ("Courts have consistently agreed that . . . when a debtor surrenders property under § 1325(a)(5)(C), the debtor relinquishes his or her rights to the collateral in favor of the creditor."); *In re Stone*, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993) ("'[S]urrender' [in § 1325(a)(5)(C) was contemplated by Congress to be . . . a relinquishing of possession or control to the holder of the claim.").

Here, the question concerns the consequences of surrender: whether Debtors, having agreed to surrender the Property in the confirmed Plan and under two agreed orders, are now barred from opposing Ditech's foreclosure.

"[B]ankruptcy courts addressing motions to compel compliance with surrender provisions of bankruptcy plans have concluded [that] active opposition to foreclosure is irreconcilable with surrender." *Hull v. Wells Fargo Bank, N.A.*, No. 6:15-cv-01990-AA, 2016 WL 1271675, at *4 (D. Or. Mar. 28, 2016); *Razzak v. Wells Fargo Bank, N.A.*, No. 17-cv-04939-MMC, 2018 WL 1524002, at *4 (N.D. Cal. Mar. 28, 2018) (holding that debtors' attempt to enjoin foreclosure was "clearly inconsistent" with agreement, set forth in confirmed plan, to surrender collateral to secured creditor); *In re Lapeyre*, 544 B.R. 719, 723 (Bankr. S.D. Fla. 2016) ("By filing affirmative defenses and a counterclaim in the Foreclosure Case, the Debtors have breached their Plan obligation to surrender their rights in the . . . Property and are in violation of the Confirmation Order."); *In re Metzler*, 530 B.R at 900 ("['Surrender'] means that a debtor must relinquish secured property . . . by refraining from taking any overt act that impedes a secured creditor's ability to foreclose its interest in secured property.").

Debtors' Plan provides for surrender of the Property by showing the proposed treatment of Ditech's claim as "Abandon" and referencing the Agreed Abandonment Order stating that "Debtors are surrendering Ditech's collateral." ECF Nos. 57 at 5, 51 at 2. Debtors acknowledged the surrender in the post-confirmation Agreed Order on Proof of Claim, which again states "Debtors' intention to surrender their interest in the [P]roperty" and anticipates an unsecured deficiency claim "after Ditech liquidates its collateral." ECF No. 66 at 1, 2. Finally, Debtors' counsel acknowledged at the hearing that Debtors agreed to surrender the Property.

In opposition to the Motion, Debtors argue under 11 U.S.C. § 554 that the Agreed Abandonment Order reinstated ownership of the Property in Debtors. ECF No. 75 at 3, 8. This argument is correct as far as it goes. But it ignores that the Agreed Abandonment Order also expressed Debtors' intention to then relinquish their interest by surrender.

Debtors further argue that Ditech's waiting more than a year-and-a-half to initiate foreclosure proceedings after receiving stay relief shows that Ditech "lack[s] faith in [its] position" that Debtors consented to surrender the Property. *Id.* at 9-10. But it is not just Ditech's "position" that Debtors consented to surrender the Property; it is a fact evidenced by the agreed orders and confirmed Plan.

Debtors admit they wanted something they knew they could not have: "a provision in the Plan that the Debtors would continue to negotiate with Ditech and, if negotiations are successful, will pay ongoing mortgage payments directly." *Id.* at 3. But "[i]n bankruptcy, as in life, a person does not get to have his cake and eat it too." *Failla v. Citibank, N.A. (In re Failla)*, 838 F.3d 1170, 1178 (11th Cir. 2016).

"The provisions of a confirmed plan bind the debtor and each creditor . . . ." 11 U.S.C. § 1327(a). Debtors are therefore bound by the Plan to surrender the Property by ceasing their opposition to foreclosure, because the result Debtors seek by injunction to avoid—losing possession of the Property—is exactly the result they agreed to by surrender. Debtors may still demand, however, that foreclosure be conducted properly under the deed of trust and applicable Mississippi law.

## ORDER

The Motion to Compel Debtors to Comply with Prior Agreed Orders for Surrender of Real Property is therefore **ORDERED GRANTED**; and

**FURTHER ORDERED** that Debtors have fourteen days from the date of this Order to comply with the surrender provision in the Plan by withdrawing their request for an injunction against foreclosure in the arbitration proceeding and in the Jasper County Chancery Court action.

*##END OF ORDER##*

7